Bettie MILLER, et al.,
Plaintiffs–Appellants,

v.

Joseph HANNA, Defendant–Respondent.

No. WD 40172.

Missouri Court of Appeals,
Western District.

Sept. 13, 1988.

Gregory O. Grounds, Ennis, Browne & Jensen, Kansas City, for plaintiffs-appellants.

Andrew S. Carroll, Wesner, Kempton and Russell, Sedalia, for defendant-respondent.

Before TURNAGE, P.J., and
MANFORD and SHANGLER, JJ.

TURNAGE, Presiding Judge.

Bettie Miller and her husband, Donald, brought suit against Joseph Hanna for personal injuries suffered by Bettie when she was struck by the Hanna pickup.  The jury assessed 0% fault against Hanna and 0% fault against Bettie.  The court entered judgment in favor of Hanna.

Bettie contends the trial court erred in giving an instruction which contained a roving commission and complains, on appeal, of the jury's failure to assess a percentage of fault to either party. Affirmed.

In September of 1983, the Millers had gone to the community building in Holden to attend a fair. As Bettie had worked in the fair, she later returned with her husband and aunt to pick up some exhibits. Donald Miller parked the car in an alley next to the community building and started carrying the exhibits out and placing them in the trunk. Bettie assisted her elderly aunt to the car and opened the passenger door.

While this was occurring, Hanna had his pickup truck parked in the same alley a short distance from the Miller car. The Hanna pickup was headed in the opposite direction from the Miller car, but because the alley was blocked, Hanna was required to back out of the alley. In backing out of the alley Hanna was required to pass the Miller car.

Donald Miller stated he was placing exhibits in the trunk of his car when he heard the Hanna pickup passing. The surface of the area was gravel and Donald said the exhaust system on the pickup was bad. Bettie was leaning into her car placing a sweater across the back seat. Bettie's aunt was standing close to her. While Bettie was leaning into her car she stated that she felt a nudge to her hip and thought it was her husband patting her to move. She moved forward a little, and again felt the nudge, and moved forward yet again, still thinking it was her husband. Bettie stated that she felt the nudge a third time, and while turning around to see what her husband wanted, saw the truck behind her, and screamed. Bettie testified that although the truck stopped when she screamed, it continued to rock back and forth such that it struck her directly on the spine three or four more times, harder than before. After stopping his truck, Hanna went to the rear of his truck and talked with Bettie and her aunt. There was some complaint that a part of the truck had struck the aunt's hand, but there was no indication that it was of any serious conse-

quence. Bettie informed Hanna that although she had been struck by the truck, she did not think she was injured.

Within a few days, however, a knot formed on Bettie's back and when it did not go away she consulted a physician. Bettie thereafter underwent surgery for a decompressive laminectomy.

The evidence presented at trial showed that both Bettie and Donald had good eyesight and hearing. Furthermore, there was no dispute that the truck was "creeping" as it backed out of the alley and that there was sufficient room in the alley for the two vehicles to pass.

The main dispute in the case turned upon what role the accident played in Bettie's injury, and what part of the injury was a result of her diabetic condition and the fact that she had a pre-existing small canal syndrome in her spine together with a degenerative disc.

Bettie contends the court erred in giving instructions 10 and 14 on behalf of Hanna. In those instructions, given in Bettie's case and in Donald's case for loss of consortium, the jury was instructed to assess a percentage of fault to Bettie whether or not Hanna was partially at fault if Bettie "knew or by the use of ordinary care could have known that there was a reasonable likelihood of contact with defendant's truck in time thereafter to have moved to a place of safety, but she failed to do so."

█ Bettie contends the phrase "to have moved to a place of safety" gave the jury a roving commission and the instruction should have specified the action Bettie could have taken to have avoided being struck. Bettie testified that after being struck she simply turned to her left and walked around the truck.

A similar instruction was approved in *George v. Gross and Janes Company*, 634 S.W.2d 579, 581–82 (Mo.App.1982). There the instruction submitted that plaintiff knew facts from which it was reasonably apparent that he was in danger and that he had time to move to a position of safety or warn a forklift driver of his position and failed to do so. The court stated that a proper instruction submitted to the jury only ultimate issues and not evidentiary

details. The court held that the instruction in the case "... adequately presented the ultimate factual issues of whether plaintiff had knowledge of the impending danger and had time either to move to safety or...." The court also held that the instruction gave the jury no roving commission. *Id.* at 582.

■ The instructions here were MAI 17.-04 (1978 Revision) 3rd Edition modified in accordance with MAI 37.02 (1986 New) 3rd Edition to conform to the requirements for the submission of comparative fault. Bettie would have the instruction submit the precise action she could have taken to have moved to a place of safety. As pointed out in *George* that would have violated the concept of pattern instructions by submitting evidentiary details to the jury rather than the ultimate issues. The ultimate issue was whether or not Bettie knew or should have known that she was in danger of being struck by the pickup in time to have moved to a position of safety. From the facts set out above it is obvious that there was ample evidence from which the jury could have decided the issue. The jury could have found that Bettie should have heard the pickup approaching. Due to the fact that Bettie was not pinned by the truck and could easily walk around it after being struck, the jury could have found that she had ample space to have moved, to avoid being struck. The jury could have found that after she felt the truck the first time, she should have known it was the truck that was hitting her and not her husband. Bettie admitted that she moved twice before being struck by the truck the third time. This is sufficient evidence to support a finding that she could have moved to a position of safety and avoided being struck the last three or four times.

■ The instructions did not give the jury a roving commission and were supported by the evidence.[1]

Bettie also contends that instructions 10 and 14 are equivalent to the submission of last clear chance which has been abrogated by the use of pattern instructions. The instructions as given here were in the form of MAI for the submission of comparative fault and are not subject to the criticism leveled.

■ Bettie further contends that there was no dispute that the truck did strike Bettie and the finding by the jury assessing 0% fault against Hanna and 0% fault against Bettie cannot stand because there was no evidence the accident was unavoidable. It does not follow that the jury was required to believe the accident was unavoidable simply because it assessed 0% fault against both parties. The form of verdict was in the following form:[2]

VERDICT A

NOTE: Complete the following paragraph by filling in the blanks as required by your verdict. If you assess a percentage of fault to any of those listed below, write in a percentage not greater than 100%, otherwise write in "zero" next to that name. If you assess a percentage of fault to any of those listed below, the total of such percentages must be 100%.

On the claim of plaintiff Betty [sic] Miller for personal injury, we, the undersigned jurors, assess percentages of fault as follows:

| Defendant Joseph Hanna | 0% (zero to 100%) |
| Plaintiff Betty [sic] Miller | 0% (zero to 100%) |
| TOTAL | 0% (zero to 100%) |

NOTE: Complete the following paragraph if you assessed a percentage of fault to defendant:

We, the undersigned jurors, find the total amount of plaintiff Betty [sic] Miller's damages disregarding any fault on the part of the plaintiff Betty [sic] Miller to be $_____. (Stating the amount)

NOTE: The court will reduce the total amount of plaintiff's damages by any

---

1. In any event the jury could not be misdirected by the defense instruction because the jury did not assess any fault to Hanna. For that reason, even if there were error in the comparative fault instruction as to Bettie, it would not be prejudicial. *Guthrie v. Brown Quarries, Inc.,* 741 S.W.2d 738, 739[2] (Mo.App.1987).

2. The form of verdict was identical in both the claim of Bettie and Donald in the respect discussed.

percentage of fault you assess to plaintiff Betty [sic] Miller.

The form of verdict is MAI 37.07 (1986 New) and explicitly allows the jury to find 0% fault against both the plaintiff and defendant.[3] The note at the beginning of the verdict form tells the jury that if it assesses a percentage of fault to any party listed it is to write in a percentage not greater than 100%, otherwise to write zero next to that name. The jury was advised that only in the event a percentage of fault was found against any party listed was the total percentage to be 100%. Next, the jury was advised to assess a percentage of fault against Hanna from zero to 100%. The jury was likewise advised to assess a percentage of fault against Bettie from zero to 100%. Thus, the verdict form specifically allowed the jury to find 0% fault against both parties. The jury was only allowed to award Bettie damages if it found a percentage of fault against Hanna. Since the jury did not assess a percentage of fault against Hanna it did not award any damages to Bettie or Donald. The form of verdict specifically allowed the jury to find 0% against both Bettie and Hanna and since it is in the form of MAI 37.07 (1986 New) the form of verdict was correct. There was no error in allowing the jury to find 0% fault against both parties.

The judgment is affirmed.

All concur.

---

**3.** The parties did not include the form of verdict in the legal file but this court ordered all instructions to be filed by the clerk of the trial court pursuant to Rule 81.12(e).